UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENDRICK MEDLOCK,

                Plaintiff,                        Case No. 1:16-cv-20

v.                                                    Honorable Paul L. Maloney

UNKNOWN GREMBOWSKI et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Kendrick Medlock presently is incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility, though the events about which he complains occurred while he was housed at the Michigan Reformatory (RMI). He sues the following RMI officials: Assistant Resident Unit Supervisor Grembowski, Deputy Warden Gregory Skipper, and Warden Carmen Palmer.

On February 20, 2015, Defendant Grembowski conducted a hearing on a Class-III misconduct charge issued to Plaintiff for possession of contraband. Plaintiff told Defendant Grembowski that he had never received a copy of the misconduct ticket. She looked at the carbonless copies attached to the ticket and noted that Plaintiff's copy was still attached. Nevertheless, two days later, Plaintiff received a misconduct report containing a guilty finding and sanctions of 10 days' loss of privileges. As a result of the misconduct conviction, Plaintiff allegedly lost his employment as a prison porter. Plaintiff contends that the issuance of the misconduct finding without a properly noticed hearing violated prison rules and his right to due process. Plaintiff alleges that Grembowski previously has expressed dislike of Plaintiff.

Two days later, on February 22, Plaintiff mailed the hearing report, misconduct ticket and an appeal to Defendant Skipper. He did not receive a response. On March 13, 2015, he approached Defendant Skipper, who was conducting rounds with Deputy Warden Schooley. Defendant Skipper told Plaintiff that he should have received a response by that time, as Skipper sent all of his appeal responses to (unknown) Sutherland. Plaintiff complains that Defendant Skipper's actions in referring the misconduct appeals to Sutherland violated prison rules and his right to due process, and he suggests that Defendant Skipper acted with the intent to cover-up the actions of his subordinates.

Plaintiff wrote a kite to Defendant Warden Palmer on March 4, 2015. He complained that his due process rights had been violated by Defendant Grembowski and that Defendant Skipper "is involved in a clandestine, corrupt act to cover-up [a] constitutional violation." (Compl., ECF No. 1, PageID.5.) Defendant Palmer did not respond to the kite. On March 16, Plaintiff approached Defendant Palmer in the yard, in the presence of Defendant Grembowski, explaining again his problem with the actions of Defendants Grembowski and Skipper. Defendant Palmer reprimanded Defendant Grembowski, indicating that Grembowski knew that she should have thrown out the misconduct charge. Defendant Palmer instructed Defendant Grembowski to find the appeal and misconduct and get it to Palmer's office. Palmer sent Plaintiff a memo stating that a review of the misconduct and the appeal process was underway. Plaintiff complains that Defendant Palmer has a policy or custom of ignoring violations of due process at disciplinary hearings, and he contends that he should not have to be confronted by a prisoner to get the problem fixed.

Plaintiff alleges that Defendant Grembowski violated his right to due process and retaliated against him to prevent review of the due process violations. Plaintiff also alleges that Defendant Skipper violated his right to due process and conspired against him, in violation of 18 U.S.C. § 241. In addition, Plaintiff alleges that Defendants Skipper and Palmer had a policy or custom of allowing due process violations without investigating and stopping them.

For relief, Plaintiff seeks compensatory damages for the 10 days' loss of privileges, together with punitive damages.

**Discussion**

    I.       Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person

acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Grembowski

Plaintiff appears to allege that, in mishandling the misconduct proceedings, Defendant Grembowski deprived him of his rights under prison policy and the Fourteenth Amendment's Due Process Clause. He also alleges that Defendant Grembowski retaliated against him for filing a prison grievance.

#### 1. Prison policy

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

2. Due Process

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class III misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class III misconduct convictions.

Even if Plaintiff had been convicted of a Class I misconduct, he would fail to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a

prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 472; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails). Plaintiff has not identified any significant deprivation arising from his misconduct conviction. Accordingly, he fails to state a viable due process claim against Defendant Grembowski for the handling of his grievance.

Further, Plaintiff had no liberty interest in his prison job. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL

21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

For all these reasons, Plaintiff fails to allege a violation of his right to due process.

### 3. Retaliation

Plaintiff also fails to allege that Defendant Grembowski unconstitutionally retaliated against him. Retaliation is actionable when it is motivated by a prisoner's exercise of his or her constitutional rights. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff wholly fails to allege that he was engaged in conduct protected by the First Amendment. Arguably, he may intend to allege that his protected conduct was his verbal objection to not receiving notice of the misconduct prior to the hearing. But his objection came after Grembowski had called the hearing. No basis exists for concluding that her decision was influenced by his objection.

In addition, Plaintiff suggests that Grembowski actually was motivated to find him guilty not by his exercise of his First Amendment rights, but because she had previously expressed her dislike of

- 9 -

Plaintiff. While taking action based on personal dislike may be unprofessional, it does not violate the First Amendment. Taken together, the facts alleged by Plaintiff suggest only that Grembowski failed to follow prison policy in convicting him of a Class III misconduct, a claim that arises only under state law.

### B.     Defendants Skipper and Palmer

Plaintiff suggests that Defendants Skipper and Palmer failed to process or respond to his complaints and grievances and failed to adequately supervise Defendant Grembowski. Plaintiff also complains that Defendant Skipper conspired to cover-up Defendant Grembowski's unconstitutional conduct.

#### 1.     Supervisory liability

To the extent that Plaintiff alleges that Defendants Skipper and Palmer failed to supervise Defendant Grembowski or failed to handle his grievances, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Skipper and Palmer engaged in any active unconstitutional behavior.

In addition, Defendants Skipper and Palmer had no duty to act on Plaintiff's complaints. Plaintiff has no due process right to file a prison grievance or kite. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the failures of Defendants Skipper and Palmer to act on Plaintiff's complaints did not deprive him of due process.

2.      Conspiracy

Plaintiff alleges that Defendant Skipper conspired to cover-up Defendant Grembowski's unconstitutional actions, ostensibly in violation of 18 U.S.C. § 241. As a private citizen, Plaintiff may not enforce a federal criminal statute. *See Abner v. Gen. Motors*, 103 F. App'x 563, 566 (6th Cir. 2004) (finding that a private citizen cannot initiate a federal criminal prosecution under 18 U.S.C. § 241); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242."). Plaintiff lacks "a judicially cognizable interest in the

prosecution or nonprosecution" of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Furthermore, the statute does not provide for a private right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (finding that "the district court properly dismissed [the plaintiff's] claim pursuant to 18 U.S.C. §§ 241 or 242 because [the plaintiff] has no private right of action under either of these criminal statutes"). Thus, any claims asserted under the foregoing statutes will be dismissed.

To the extent that Plaintiff intends to allege the existence of a civil conspiracy, he also fails to state a claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). A plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative and fail on every element of the claim. He fails to allege facts suggesting the existence of an agreement between Skipper and any other Defendant. More significantly, Plaintiff fails to allege that Defendant Grembowski took or attempted

to take any unlawful action against Plaintiff that Skipper could have covered-up. For both reasons, Plaintiff fails to state a conspiracy claim against Defendant Skipper.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   February 26, 2016              /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge